■ STATE DIVISION OF HUMAN RIGHTS, on the Complaint of WILLIAM WASHINGTON, Complainant, v. RICHARD GANLEY et al., Respondents.— Proceeding pursuant to section 298 of the Executive Law to review a determination of the State Human Rights Appeal Board, dated February 3, 1971, which modified and, as so modified, affirmed an order of the State Division of Human Rights, dated September 3, 1970, finding Richard and Barbara Ganley guilty of racial discrimination in housing accommodations, in which proceeding the Division of Human Rights has cross-moved to dismiss the petition and cross-petitioned to enforce the order as modified. Petition dismissed; cross petition denied; and, on the cross petition, the order of the Division of Human Rights is reversed, on the law, and the complaint of William Washington is dismissed; all without costs. The uncontroverted facts establish that the petition for review was served and filed beyond the 33-day period allowed under the statutes therefor when by mail (Executive Law, § 298; CPLR 2103, subd. [b], par. 2). However, the merits of the Division of Human Rights' order may be considered when the Division seeks from this court affirmative action in the form of an enforcement order. Under the circumstances, petitioner's papers are considered with respect to the cross petition for enforcement (*Matter of Hempstead Volunteer Fire Dept.* v. *New York State Div. of Human Rights,* 35 A D 2d 601; *Matter of Moskal* v. *State of New York, Executive Dept., Div. of Human Rights,* 36 A D 2d 46) and this court may reverse the order sought to be enforced (see *Ernsteins* v. *State Div. of Human Rights,* 35 A D 2d 599, app. dsmd. 28 N Y 2d 802). In our opinion, the Division order was not supported by sufficient evidence in the record considered as a whole. The subject house was owned by Mr. and Mrs. Ganley as tenants by the entirety. The Ganleys were separated. The house was occupied by Mrs. Ganley and the Ganleys' three children. Although the Ganleys' 1967 separation agreement required expeditious sale of the premises, Mr. Ganley's testimony was to the effect that actually he did not want the house sold, because it provided shelter for his family and because women who come into large sums of money are known to squander the money rapidly. Ganley claimed that when his wife had periodic urges to sell he would go through the motions of attempting to sell, but only in order not to antagonize her. His claim that he never actually intended to sell is borne out by his uncontroverted testimony that about a year prior to the hearing he advertised the house in *Newsday* but turned down resultant binder offers. He also testified without contradiction that he turned down an offer from a Mr. Wides (a white man) about eight months prior to the hearing. The complainant viewed the house on Saturday afternoon, October 18, 1969. Mr. Ganley was not present. Mrs. Ganley promised that her husband would call the complainant that evening. Mr. Ganley did not call, however. Not having heard from Mr. Ganley, and not aware that the Ganleys were separated, the complainant suspected that the Ganleys were discriminating. By prearrangement, Mrs. Ackley, a white person, telephoned Mrs. Ganley on October 21, 1969. Mrs. Ackley viewed the premises on Wednesday, October 22, and asked Mrs. Ganley about binder requirements, *inter alia.* Subsequently, in an October 24 conversation with Mr. Ganley, Mrs. Ackley expressed hesitancy in her avowed interest in the house. Mr. Ganley thereupon expressed relief and indicated that he preferred to keep the house off the market and to hold it for an interested friend who did not then have the funds. In view of the chronology and nature of the events herein, it is our conclusion that the evidence was not sufficient, on the record considered as a whole, to establish that the Ganleys discriminated and

984

that Mr. Ganley had actually intended to sell the house in which his wife and children resided. We are of the opinion that the complainant's conclusion of discrimination, while possibly understandable in the light of his prior experiences, was reached precipitately and without consideration of the peculiar status and problems of the Ganley family. Shapiro, Acting P. J., Gulotta, Christ, Brennan and Benjamin, JJ., concur.